UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,

V.

JUAN SALCEDO.

CR 01-122ML

NOTICE OF MOTION; MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(2); MEMORANDUM OF POINTS AND AUTHORITIES

---

TO: DISTRICT COURT JUDGE MARY LISI AND ASSISTANT UNITED STATES ATTORNEY MARY E. ROGERS

MOTION

Defendant, Juan Salcedo, hereby moves this Honorable Court for a reduction in the sentence imposed in this case on March 17, 2006. This motion is made pursuant to 18 U.S.C. § 3582(c)(2) and is based upon the attached memorandum of points and authorities, all files and records in this case, and such further argument and evidence as may be presented at the hearing on this motion.

Respectfully submitted,

DATED: June 13, 2008

By Juan Salcedo

Juan Salcedo, Defendant

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On December 19, 2002, Juan Salcedo was sentenced for crack cocaine base, possession with intent to distribute, to serve 210 months of imprisonment and 5 years of supervised release. The sentence was imposed under the sentencing guidelines pre-Booker, with a base level computed under §2D1.1 of the guidelines for a crack cocaine quantity of over 50 grams. The base offense level - under the guidelines in effect at the time - was 32. Combined with other guidelines factors, it produced a range of 32-35. The sentence imposed by the Court was 210 months, which was the low end. Subsequent to this sentencing, Juan Salcedo submitted an appeal based on *Booker* and was re-sentenced to 144 months, producing a new base offense level of 31.

Subsequent to Juan Salcedo's re-sentencing - on November 1, 2007 - an amendment to §2D1.1 of the guidelines took effect, which, generally, reduces base offense levels for most quantities of crack cocaine by two levels and, specifically, reduces the base offense level for the over 50 gram quantity of crack cocaine in this case by two levels, to 30. *See* U.S.S.G. §2D1.1. This amendment was adopted in response to studies which raise grave doubts about the fairness and rationale of the 100-to-1 crack/powder ratio incorporated into the sentencing guidelines. *See generally* United States Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy* (May 2007) (hereinafter "2007 Sentencing Commission Report"); United

States Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy* (May 2002); United States Sentencing Commission, *Special Report to Congress: Cocaine and Federal Sentencing Policy* (April 1997); United States Sentencing Commission, *Special Report to Congress: Cocaine and Federal Sentencing Policy* (Feb. 1995). *See also Kimbrough v. United States,* 128 S. Ct. 558, 568-569 (2007) (discussing history of crack cocaine guideline and various Sentencing Commission reports). Yet the amendment is only a partial response, as the Sentencing Commission itself recognized. The Commission explained:

> The Commission, however, views the amendment only as a partial remedy to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to these problems. Any comprehensive solution requires appropriate legislative action by Congress. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

2007 Sentencing Commission Report, *supra*, at 10.

Subsequent to the effective date of this amendment to §2D1.1, the Sentencing Commission considered whether to make the amendment retroactive under the authority created by 18 U.S.C. § 3582(c)(2). It took that action on December 11, 2007, by including this amendment in the list of retroactive amendments in § 1B1.10 of the guidelines. *See* 73 Fed. Reg. 217-01 (2008). Based on this retroactivity, the statutory

authority underlying it, and the Supreme Court's intervening decisions in *United States v. Booker*, 543 U.S. 220 (2005); *Rita v. United States*, 127 S. Ct. 2456 (2007); *Gall v. United States*, 128 S. Ct. 586 (2007); and *Kimbrough v. United States*, *supra*, Juan Salcedo brings this motion to reduce his sentence.

II.

ARGUMENT

A. JUAN SALCEDO'S OFFENSE LEVEL SHOULD BE REDUCED FROM 31 TO 30. AND THE GUIDELINE RANGE REDUCED FROM 144 TO BETWEEN 97 AND 121 BASED ON THE AMENDMENT TO §2D1.1.

18 U.S.C. § 3582(c)(2) provides as follows:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant... the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Section 1B1.10 is the guidelines policy statement which implements 18 U.S.C. §3582(c)(2). Subsection (c) of that policy statement lists amendments that are covered by the policy statement. And one of the amendments which is listed

is amendment 711 to the guidelines.[1] That is the amendment which reduced the base offense level for crack cocaine offenses. *See* U.S.S.G., App. C, § 711.

Application of this amendment to the crack cocaine guideline in the present case results in a decrease of the base offense level from 31 to 30 and a decrease in the resulting guideline range from 144 to between 97 and 121. These numbers are based on the following calculation:

> The case involves over 20 grams of cocaine base. Under the Drug Equivalency Table, available at http://www.fd.org/odstb_CrackCocaine.htm, 50 grams of cocaine base converts to 1000 kg of marihuana (50 gm x 20 kg = 1000 kg). Under the Drug Quantity Table, 1000 kg of marihuana corresponds to a combined offense level of 32, which is reduced by two levels to 30.

B. THE COURT SHOULD REDUCE JUAN SALCEDO'S SENTENCE TO BETWEEN 97 AND 121 MONTHS.

Based on the amendment to § 2D1.1, the Court should significantly reduce Juan Salcedo's sentence. It follows from discussion in the preceding section that the amendment alone justifies a reduction of 23 months.

The Court should not stop there, however. At the time of Juan Salcedo's original sentence, the Court was required

---

[1] This amendment is not listed in the November 1, 2007 Guidelines Manual because the Sentencing Commission vote making it retroactive was on December 11, 2007. *See* United States Sentencing Commission News Release dated December 11, 2007, available at http://www.USSG.gov/PRESS/rel1121107.htm. *See also* 73 Fed. Reg. 217-01 (2008).

to treat the guidelines as mandatory, under controlling law at that time. Since then, the Supreme Court has held the guidelines in their mandatory form as unconstitutional and - through severing 18 U.S.C. § 3553(b) - made them "effectively advisory." *Booker*, 543 U.S. at ____. *Booker* and subsequent Supreme Court cases clarifying it - namely, *Rita v. United States, supra; Gall v. United States, supra; and Kimbrough v. United States, supra* - have created a brave new world, in which the guidelines are but one of several factors to be considered under § 3553(a). What the Supreme Court has described as the "overarching provision" in § 3553(a) is the requirement that courts "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 128 S. Ct. at 570.

*Booker* and its progeny apply to the imposition of a new sentence under 18 U.S.C. § 3582(c)(2), moreover. The Ninth Circuit considered this question in *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007) and held, put most succinctly, that "*Booker* applies to § 3582(c)(2) proceedings." *Hicks*, 472 F.3d at 1169. As the court explained in more depth:

> *Booker* explicitly stated that, "as by now should be clear, [a] mandatory system is no longer an open choice." Although the Court acknowledged that Congress had intended to create a mandatory guideline system, *Booker* stressed that this was not an option: "[W]e repeat, given today's constitutional holding, [a mandatory Guideline regime] is not a choice that remains open ... [W]e have concluded that today's holding is

> fundamentally inconsistent with the judge-based sentencing system that Congress enacted into law." The Court never qualified this statement, and never suggested, explicitly or implicitly, that the mandatory Guideline regime survived in any context.
>
> In fact, the Court emphasized that the guidelines could not be construed as mandatory in one context and advisory in another. When the government suggested, in *Booker*, that the Guidelines be considered advisory in certain, constitutionally-compelled cases, but mandatory in others, the Court quickly dismissed this notion, stating, "we do not see how it is possible to leave the Guidelines as binding in other cases ...[W]e believe that Congress would not have authorized a mandatory system in some cases and a non-mandatory system in others, given the administrative complexities that such a system would create." In short, *Booker* expressly rejected the idea that the Guidelines might be advisory in certain contexts, but not in others, and Congress has done nothing to undermine this conclusion. Because the "mandatory system is no longer an open choice," district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentences under § 3582(c)(2).

*Hicks,* 472 F.3d at 1170 (citations omitted).

Here, there are a number of non-guidelines factors that justify a sentence below even the new guideline range.

C. JUAN SALCEDO'S POSES NO DANGER TO ANY PERSON OR THE COMMUNITY BY HAVING HIS SENTENCE REDUCED.

In determining whether to reduce a defendant's sentence and whether to depart from the guideline range, the Court will look to any public safety considerations and the danger that may be posed by the defendant to any person or to the community. Juan Salcedo is a rehabilitated inmate, having engaged in several rehabilitative programs and poses no danger if his sentence is reduced.

One consideration to which the Court should give particular weight is a consideration expressly recognized by the Supreme Court in *Kimbrough v. United States, supra* as a ground for not following the guidelines - the questionable provenance of the crack/powder ratio. As the Government itself acknowledged in *Kimbrough*, "the Guidelines 'are now advisory' and ..., as a general matter, 'courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines.'" *Kimbrough,* 128 S. Ct. at 570 (quoting Brief for United States 16). While the government then tried to distinguish policy disagreement with the 100-to-1 crack/powder ration from other policy disagreements, the Supreme Court squarely rejected that argument. *See Kimbrough*, 128 S. Ct. at 570-74.

Indeed, the Court suggested that policy disagreement in this are was even more defensible than in other areas. It

noted that "in the ordinary case, the Commission's recommendation of a sentence will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives,' *id.* at 574 (quoting *Rita*, 127 S. Ct. at 2465), and so "closer review may be in order when the sentencing judge varies from the Guidelines, based solely on the judge's view that the Guidelines range 'fails properly to reflect § 3553(a) considerations' even in a mine-run case." *Kimbrough*, 128 S. Ct. at 575. The Court then explained that this was not the case with the crack cocaine guidelines, however.

> The crack cocaine Guidelines, however, present no occasion for elaborative discussion of this matter because those Guidelines do not exemplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines ranges for crack cocaine offense, as we earlier noted, the Commission looked to the mandatory minimum sentences in the 1986 Act, and did not take account of "empirical data and national experience." Indeed, the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions, *i.e.*, sentences for crack cocaine offenses "greater than the necessary" in light of the purposes of sentencing set forth in § 3553(a). Given all this, it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater

> than necessary" to achieve § 3552(a)'s purposes, *even in a mine-run case.*

*Kimbrough,* 128 S. Ct. at 574-75 (emphasis added)(citations omitted).

These concerns are only partially assuaged by the recent amendment reducing crack cocaine offense levels, moreover. This also was recognized by the Supreme Court in *Kimbrough*:

> This modest amendment yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder. (Citation and footnote omitted.) Describing the amendment as "only ... a partial remedy" for the problems generated by the crack/powder disparity, the Commission noted that "[\a]ny comprehensive solution requires appropriate legislative action by Congress."

*Kimbrough,* 128 S. Ct. at 569 (quoting 2007 Sentencing Commission Report, *supra* pp. 3-4 at 10). *Kimbrough*'s rationale for varying from crack guidelines therefore remains even after the new guideline is applied.

III.

## CONCLUSION

This Court should adjust Juan Salcedo's sentencing guideline range downward to between 97 and 121 months.

Respectfully submitted,

DATED: June 13, 2008

By Juan Salcedo
Juan Salcedo, Defendant